UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAM POWERS,

        Plaintiff,

vs.

Case No. 1:07-cv-1235

Hon. Hugh W. Brenneman, Jr.

KALAMAZOO BREAKTHROUGH
CONSUMER HOUSING COOPERATIVE
d/b/a NEW HORIZON VILLAGE, and,
MIDWEST MANAGEMENT COMPANY,
LLC,

        Defendants.

                           /

**OPINION**

Plaintiff filed a civil rights action against defendants. This matter is now before the court on defendants' motion to dismiss and for summary judgment (docket no. 33).

**I.    Plaintiff's complaint**

Plaintiff has named two defendants in this action, the Kalamazoo Breakthrough Consumer Housing Cooperative ("KBCHC") and Midwest Management Company ("Midwest Management"). KBCHC owns the New Horizon Village Apartments ("New Horizon"). Midwest Management manages New Horizon. Plaintiff alleged that she moved into a rental unit owned by KBCHC in late 2005. Since that time, plaintiff has suffered from multiple disabilities. Plaintiff alleged that defendants refused or ignored her repeated requests to accommodate those disabilities. Plaintiff's complaint contains two counts. In Count I, plaintiff alleged that defendants violated two federal statutes. First, plaintiff claims that she is an aggrieved person under the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of

1988, 42 U.S.C. § 3601 *et seq*. ("FHA"),[1] "because she has been repeatedly denied an accommodation regarding a rental unit despite her disability and her request for an accommodation of that disability, and because she has been retaliated against because of those requests." Compl. at ¶¶ 4 and 6. Second, plaintiff claims that she is a qualified person with a disability under the Rehabilitation Act of 1973, 29 U.S.C. § 794 (sometimes referred to as "Section 504"), and entitled to relief under that statute. *Id.* at ¶¶ 4-6. In Count II, plaintiff claims that she is entitled to relief under the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L. § 37.1101 *et seq*. *Id.* at ¶¶ 29-31.

## II. Legal Standard

Although this motion is titled as a "motion to dismiss or for summary judgment," it has been briefed as a motion for summary judgment and will be treated as such. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

---

[1] The Fair Housing Act ("FHA") was originally passed by Congress as Title VIII of the Civil Rights Act of 1968, which prohibited housing discrimination on the basis of race, gender and national origin. *See* 42 U.S.C. §§ 3601 *et seq*. The Fair Housing Amendments Act ("FHAA") of 1988 extended coverage to handicapped individuals. 42 U.S.C. § 3604(f). To be consistent with the complaint and briefs filed in this matter, the court will refer to plaintiff's claim as brought under the FHA.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Discussion

#### A. Defendants' motion

Defendants seek summary judgment on four grounds. First, defendants contend that plaintiff is not disabled. Second, defendants contend that plaintiff's first request for accommodation, allegedly made in December 2005 or January 2006 was defective. Third, defendants contend that plaintiff's second request for an accommodation allegedly made in February 2007 was inadequate. Fourth, defendants contend that a waiver executed by the parties on March 29, 2007, operated as an accord and satisfaction for all of plaintiff's claims.

#### B. Discrimination under the FHA for failure to accommodate

"The Fair Housing Act announces that '[i]t is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States.' 42 U.S.C. § 3601." *Campbell v. Robb*, 162 Fed. Appx. 460, 465-466 (6th Cir. 2006). *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982) (observing that the FHA embodies the "broad remedial intent" of Congress with respect to fair housing). The Sixth Circuit explained the nature of an FHA

3

discrimination claim arising from a landlord's failure to provide an accommodation to a disabled person in *Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039 (6th Cir. 2001):

> The Fair Housing Act makes it unlawful to discriminate against "any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling," on the basis of that person's handicap. 42 U.S.C. § 3604(f)(2)(A). Discrimination prohibited by the Act includes the refusal to make reasonable accommodations in "rules, policies, practices, or services, when such accommodations may be necessary to afford [the handicapped individual an] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Moreover, the Act "imposes an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons." *United States v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416 (9th Cir.1994); *see also* H.R.Rep. No. 100-711 at 25 (1988), U.S. Code Cong. & Admin. News at 2173, 2186.
>
> Accommodations required under the Act must be both reasonable and necessary to afford the handicapped individual an equal opportunity to use and enjoy a dwelling. *See Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 795-96 (6th Cir.1996) (holding that the city had violated the Fair Housing Act by failing to allow adult foster care homes to operate in areas zoned for single-family neighborhoods). An accommodation is reasonable when it imposes no "fundamental alteration in the nature of a program" or "undue financial and administrative burdens." *Id.* at 795.
>
> Whether a requested accommodation is required by law is "highly fact-specific, requiring case-by-case determination." *California Mobile Home Park*, 29 F.3d at 1418; *Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096, 1104 (3d Cir.1996). Courts generally balance the burdens imposed on the defendant by the contemplated accommodation against the benefits to the plaintiff. *See Smith & Lee Assocs.*, 102 F.3d at 795. In determining whether the reasonableness requirement has been met, a court may consider the accommodation's functional and administrative aspects, as well as its costs. *See Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 604 (4th Cir.1997).
>
> \* \* \*
>
> Because the Fair Housing Act adopted the concept of a "reasonable accommodation" from § 504 of the Rehabilitation Act, 29 U.S.C. § 791, cases interpreting that term under the Rehabilitation Act also apply to claims under the Fair Housing Act. *See Smith & Lee Assocs.*, 102 F.3d at 795. Under the Rehabilitation Act, our circuit requires a plaintiff seeking an accommodation to show that it is reasonable. *See Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir.1996)

4

> ("[T]he disabled individual bears the initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable.") (emphasis in original). The employer then has the burden of persuasion on whether the proposed accommodation would impose an undue hardship. *See id.* at 1183-84.

*Groner*, 250 F.3d at 1043 -1044.

In determining whether an accommodation is required under the FHA, the three operative elements are "reasonable," "equal opportunity" and "necessary." *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002).

> An accommodation is "reasonable" when it imposes no "fundamental alteration in the nature of the program" or "undue financial and administrative burdens." "Equal opportunity" under the [FHA] is defined as "giving handicapped individuals the right to choose to live in single-family neighborhoods, for that right serves to end the exclusion of handicapped individuals from the American mainstream." Linked to the goal of equal opportunity is the term "necessary." In order to prove that an accommodation is "necessary," "[p]laintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice."

*Id.* (internal citations omitted). Thus, courts have concluded that § 3604(f)(3)(B) requires accommodation if such accommodation (1) is reasonable, and (2) necessary, (3) to afford a handicapped person the equal opportunity to use and enjoy a dwelling. *See Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002); *Howard*, 276 F.3d at 806.

### C. Plaintiff's alleged disability

Defendants contend that plaintiff cannot bring an FHA accommodation claim because she is not disabled or handicapped. Section 3602(h) defines a "handicap" as follows:

> "Handicap" means, with respect to a person--
>
> (1) a physical or mental impairment which substantially limits one or more of such person's major life activities,

>    (2) a record of having such an impairment, or
>
>    (3) being regarded as having such an impairment,
>
> but such term does not include current, illegal use of or addiction to a controlled substance (as defined in section 802 of Title 21).

42 U.S.C. § 3602(h).

The regulations provide guidance in defining a physical or mental impairment under the Act:

> The term physical or mental impairment includes, but is not limited to, such diseases and conditions as orthopedic, visual, speech and hearing impairments, cerebral palsy, autism, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, Human Immunodeficiency Virus infection, mental retardation, emotional illness, drug addiction (other than addiction caused by current, illegal use of a controlled substance) and alcoholism.

24 C.F.R. § 100.201(a)(2). The term "major life activities" means "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *Id.* at § 100.201(b). To have a record of such an impairment means that a person "has a history of, or has been misclassified [sic] as having, a mental or physical impairment that substantially limits one or more major life activities." *Id.* at § 100.201(c).

Because the Americans with Disabilities Act's definition of disability is similar to the FHA's definition of "handicap," *see* 42 U.S.C. § 12102(2), courts use ADA caselaw as a guide to interpreting the FHA's definition of handicap. *See, e.g., Dadian v. Village of Wilmette*, 269 F.3d 831, 837 (7th Cir. 2001); *United States v. Southern Management Corp.*, 955 F.2d 014, 922-23 (4th Cir. 1992). Similarly, courts review claims brought under the Rehabilitation Act as they would claims brought under the ADA. *Doe v. Salvation Army in the United States*, 531 F.3d 355, 357 (6th Cir. 2008); *Brenneman v. MedCentral Health System*, 366 F.3d 412, 418 (6th Cir. 2004).

Thus, it has been stated: that "major life activities" include "activities that are of central importance to daily life;" that such activities are "substantially limited' when the impairment "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives;" and that the limitation "must also be permanent or long term." *Verhoff v. Time Warner Cable, Inc.*, 299 Fed. Appx. 488, 492 (6th Cir. 2008) (discussing a disability under the ADA), *citing Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002). The existence of a handicap is determined on a case-by-case basis. *See Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999) (ADA case); *Groner*, 250 F.3d at 1044.

The regulations summarize the basic requirements of the FHA, stating that "[i]t shall be unlawful for any person to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit, including public and common use areas." *Id.* at ¶ 100.204(a). The regulations include the following example to illustrate a landlord's duty to accommodate a tenant with disability:

> Progress Gardens is a 300 unit apartment complex with 450 parking spaces which are available to tenants and guests of Progress Gardens on a first come first served basis. John applies for housing in Progress Gardens. John is mobility impaired and is unable to walk more than a short distance and therefore requests that a parking space near his unit be reserved for him so he will not have to walk very far to get to his apartment. It is a violation of § 100.204 for the owner or manager of Progress Gardens to refuse to make this accommodation. Without a reserved space, John might be unable to live in Progress Gardens at all or, when he has to park in a space far from his unit, might have great difficulty getting from his car to his apartment unit. The accommodation therefore is necessary to afford John an equal opportunity to use and enjoy a dwelling. The accommodation is reasonable because it is feasible and practical under the circumstances.

*Id.* at § 100.204(b).

Genuine issues of material fact exist with respect to whether plaintiff suffered from a "handicap" as defined in § 3602(h) and the accompanying regulations. In her affidavit, plaintiff stated that she has pain in the knees which cause her to struggle to walk up and down stairs; that she must crawl sometimes; that in the summer of 2006 she could walk no more than one city block without the need to stop; that she was oxygen dependent from February 2007 through August 2007; that she has walked with the aid of a walker from the Spring of 2007 to the present; and that in January 2006 she filled out a request for accommodation (a form 504) for a disability relating to osteoarthritis and other knee problems. Powers Affidavit at ¶¶ 2-5 (docket no. 39-2). Plaintiff's most recent occupation was as a truck driver. Powers Dep. at 9 (docket no. 39-23). She stopped working for her employer in February 2005 due to osteoarthritis of the knees. *Id.*

In support of her claim, plaintiff has provided copies of two medical evaluations which predate her December 2005 accommodation request. On May 20, 2005, plaintiff was examined by doctors at the Michigan State University/Kalamazoo Center for Medical Studies Clinic Support Services ("MSU/KCMS"), for review of bilateral knee pain. *See* docket no. 39-6. The doctors assessed plaintiff as suffering from bilateral knee pain secondary to patellofemoral chondromalacia and "left knee possible medial meniscus tear." *Id.* On December 16, 2005, plaintiff was examined by R. Scott Lazara, M.D., of the Michigan Medical Consultants to the Michigan Disability Determination Service (DDS) and Social Security Administration (SSA). *See* docket no. 39-7. Dr. Lazara reached the following conclusions:

> 1. Shoulder, knee, and foot pain
>
> The patient did have significant disease of the right knee and less on the left. Per review of the chart, she had an MRI study which showed degenerative arthritis of the medial meniscus in both knees. She did have a valgus deformity of the right knee with associated tenderness.

> Functionally she did have difficulty doing orthopedic maneuvers, mostly due to stiffness and pain. She compensates with a wide based gait without the use of an assistive device. Of note she is 303 pounds at 62 1/2 inches which is contributing to her disease process. She is undergoing no active therapy now. Weight loss would be essential to avoid any further progression.
>
> 2.  Diabetes
>
> The patient's sugars continue to be somewhat poorly controlled. There was no evidence of sequelae. She did of note have lower extremity edema due to her body habitus.
>
> Functionally the patient is able to tolerate sedentary positions. She appears to have diminished endurance and does her household chores "in stages."

*See* docket no. 39-7.

Plaintiff also provided defendants with copies of an undated SSA determination which denied her claim for disability benefits, but identified physical limitations as reflected in medical records from October 6, 2005 through January 4, 2006. *See* docket no. 39-8. Based on these records, the SSA concluded that "[t]he medical information shows that you have osteoarthritis of both your knees, have diabetes and may be overweight." *Id.* These conditions prevented plaintiff

> from performing work that requires heavy lifting or frequent balancing, stooping, kneeling, crouching, crawling or climbing of ramps or stairs. You should never climb ladders, ropes or scaffolds. However, you should be able to perform work that does not expose you to these conditions.

*Id.* While these conditions prevented plaintiff from performing her past job, she was found to have the capacity to perform other light unskilled jobs. *Id.*

In a letter dated January 9, 2007, Patrick Chiu, M.D., of MSU/KCMS, stated that plaintiff had suffered from shortness of breath, sometimes at rest, with an impairment in diffusion capacity; pain in the knees and feet with recommendation for Synvisc injections and Vicodin; and

9

Type II diabetes, since April 30, 2006. *See* docket no. 39-13. Dr. Chiu felt that plaintiff's shortness of breath and severe knee pain precluded her from work. *Id.* Another letter from Dr. Chiu, dated March 4, 2007, stated that plaintiff had "shortness of breath and oxygen dependency." *See* docket no. 39-16. The doctor concluded:

> As such, she does need an environment that is smoke free, along with being in a building that is smoke free, and also free of other fumes and chemical exposures. In addition, she has difficulty breathing when it is hot or humid, and does require an apartment with access to air conditioning to assist her breathing.

*Id.*

Plaintiff has documented conditions of shortness of breath, degenerative arthritis of the medial meniscus in both knees, and difficulty performing orthopedic maneuvers. Her affidavit states that she has trouble climbing stairs. The SSA concluded that she could not perform her previous work and had orthopedic restrictions that affected her ability to perform work related activities. In addition, Dr. Chiu opined that plaintiff could not work due to shortness of breath and pain in her knees. Viewing this evidence in the light most favorable to plaintiff, a jury could reasonably conclude that she has physical impairments which substantially limit one or more of her major life activities and is "handicapped" for purposes of the FHA.[2] Specifically, plaintiff's physical

---

[2] Defendants assert that plaintiff has not presented competent evidence on this issue, because she has no expert reports on the issue of disability, no opinions evaluating her disability and cannot rely on her medical records or the SSA determination. Defendants' Brief at 16-17 (docket no. 34); Defendants' Reply Brief at 3-6 (docket no. 40). Defendants cite no authority in support of this assertion. Contrary to defendants' assertion, courts have determined that a plaintiff's testimony may be sufficient to establish a handicap under the FHA. In *Hansen v. Liberty Partners, LLC*, No. 3:04-cv-1099, 2005 WL 3527162 (M.D. Tenn. Dec. 22, 2005), the court rejected the argument that expert testimony is necessary in order to establish disability or handicap under the FHA, citing *Head v. Glacier Northwest, Inc.*, 413 F.3d 1042, 1059 (9th Cir.2005)(while medical testimony may be helpful to establish whether one cannot perform a major life activity, a plaintiff's testimony alone may establish a genuine issue of material fact on the issue) and *Clark v. Whirlpool Corp.*, 109 Fed. Appx. 750, 754 (6th Cir.2004) (under state statute analogous to ADA, "plaintiff's subjective complaints of disabling pain may be sufficient to prove that she was 'handicapped,' as that term is defined in the statute; there is no requirement that the plaintiff bolster that testimony with corroborating medical evidence"). *Hansen*, 2005 WL 3527162 at *8.

limitations affected her ability to perform such functions as walking, breathing and working. *See* 24 C.F.R. § 100.201(b). *See, e.g., Dadian v. Village of Wilmette*, 269 F.3d 831, 837-38 (7th Cir. 2001) (osteoporosis and degenerative disease of the joints substantially limited the plaintiff's ability to walk (a major life activity) under the FHA, when these conditions created problems with the plaintiff's sense of balance and required her to hold onto the stairwell rails and pull herself up the stairs leading to her bedroom; this evidence was sufficient to deny the defendant's motion for a directed verdict).[3] Accordingly, defendants' motion for summary judgment with respect to whether plaintiff suffers from a handicap under the FHA will be denied.

### D. Plaintiff's first request for an accommodation.

Defendants take the position that plaintiff's accommodation request was defective because she failed to submit a written request for an accommodation pursuant to her occupancy agreement (docket no. 34-9) and New Horizon's Member Rules (docket no. 34-10). *Id.* The rules reflect that New Horizon members seeking a transfer must submit a formal request to the Board of Directors "using the form provided." *See* docket no. 34-10 at 7. In addition, the member must be current in all financial obligations to the Cooperative, be a member in good standing, and be moving due to "a verified increase or decrease in family size or possess health problems that require different living accommodations as verified by a physician (M.D., O.D.) or must have lived at New Horizon for a period of at least 5 consecutive years." *Id.* However, defendants admit that the FHA does not require written accommodation requests, and cite no authority that a plaintiff must comply

---

[3] Plaintiff erroneously cited this case as "*Radian v. Village of Wilmette*, 209 F.3d 831 (2nd Cir. 2001)." *See* docket no. 39.

11

with a landlord's rules in submitting an accommodation request under the FHA. Defendants' Brief at 17 (docket no. 34).

Before a court can evaluate a plaintiff's prima facie case for the failure to provide an accommodation, the plaintiff must show that a special accommodation was, in fact, requested. *Colon-Jimenez v. GR Management Corporation*, 218 Fed. Appx. 2, 3 (1st Cir. 2007). *See, e.g., Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 260-61 (1st Cir. 2001) (in an ADA case, the employer's "reasonable accommodation requirement" did not apply until it was triggered by a request from the employee, which was sufficiently direct and specific as to give notice that she needed a special accommodation; a mundane request for a change is insufficient); *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1219 (11th Cir. 2008) (city could not be liable under the FHA for refusing the grant a reasonable accommodation if it never knew that the accommodation was in fact necessary); *Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1381 (3rd Cir. 1991) (to be liable for failing to provide a reasonable accommodation under the Rehabilitation Act, a school "must know or be reasonably expected to know of [a student's] handicap"). "A routine or 'mundane' request, such as a request to transfer to a different apartment, does not rise to the level of a request for a reasonable accommodation unless the plaintiff specifically explains 'how the accommodation requested is linked to some disability.'" *Colon-Jimenez*, 218 Fed. Appx at 3 (internal citation omitted).

Plaintiff provided the following testimony in her deposition and affidavit. Plaintiff first sought an accommodation in December 2005, when she requested a ground level apartment due to osteoarthritis of the knees. Powers Dep. at 9-11, 48-49, 54-55 (docket no. 39-23). Plaintiff was told by defendant's management that she would be placed on a "mandatory move list," which

would allow her to move into an apartment that she could afford and where she "[w]ould not have to deal with the stairs." *Id.* at 50. Plaintiff did not provide defendants with a letter from a medical care provider at that time. *Id.* at 50, 53. In January 2006, she provided defendants' agent, Kathy Wayman, with "a document from the Social Security Administration indicating the extent of my disabilities." Powers Aff. at ¶ 5 (docket no. 39-2). Plaintiff was not asked "to fill out all of that paperwork" until February or March of 2006. Powers Dep at 50. Plaintiff stated that she had no copies of the "504 application," and that in 2007 defendants' office staff approached her to update records because the staff did not have "copies of material" related to this request. *Id.* at 50-51. Plaintiff referred to the December 2005 conversation in a February 21, 2007 letter to defendants' agent. *See* docket no. 34-12 ("Back in Dec. 2005 . . . I told Kathy [Wayman] that, not only did I need help from [HUD], I needed to get into a place on the ground level because I have bad knees and feet. Sometime in Jan. 2006, or around there, I filled out some paperwork for Kathy, including the need for a ground level unit").

In their brief, defendants spend considerable effort to discredit plaintiff's testimony. However, plaintiff's credibility is not an issue before the court on the present motion for summary judgment. In deciding this motion, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party, which in this case is the plaintiff. *See McLean*, 224 F.3d at 800. Viewing the evidence in the light most favorable to plaintiff, a jury could reasonably find that she verbally requested an accommodation for her knee condition in December 2005 (i.e., a ground floor unit) and that she filled out the related "paperwork" in early 2006.

      E.      **Plaintiff's second request for an accommodation**

During March 2007, it appears that plaintiff's need for financial assistance became intermingled with her request for an accommodation. By way of background, Defendants have produced a ledger which indicates that plaintiff paid rent only sporadically from July 2005, and was significantly behind in her rental charges (i.e., $10,995.85) by September 2006. *See* docket no. 34-18. The record reflects that plaintiff had been placed on the "Section 8" waiting list in August 2005.[4] *See* docket no. 34-15. She was certified for a Section 8 voucher based on lack of income between August 2005 and September 1, 2007. *See* docket nos. 34-16 and 34-17. It appears that plaintiff did not receive a voucher because she remained in her two bedroom town home. *See discussion, infra*. In December 2006, defendants sent plaintiff a demand for possession of the premises. *See* docket no. 34-19. In her December 16, 2006 response to this demand, plaintiff stated that she was placed on a mandatory move list, that HUD "would be filling the gap for rent," asked the management why she was not given an apartment that had opened up, and noted that "[w]intertime poses a problem for me as I do not motate well in cold weather due to my knees." *Id.*

Then, on or about February 21, 2007, plaintiff provided defendants a form which requested the following accommodations: "(1) floor/ground level unit (2) not around smoking or other carcinogens, solvents, etc." *See* docket no. 34-22. The form was sent to Dr. Chiu, who certified that plaintiff was disabled and would benefit from the requested accommodations. *Id.* Plaintiff testified that she was offered an apartment in the "Dillon Building" in March 2007. Powers

---

[4] "Section 8 housing derives its name from Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f, which provides that the Secretary of HUD may enter 'annual contributions contracts' with public housing agencies, through which the PHAs . . . obtain federal funding to enable low-income families to enter the housing market and rent existing dwelling units from private landlords. . . . Under the program, qualifying tenants pay a portion of their income to a private landlord, and in order to meet market-level rents, the PHA makes additional 'assistance payments' to the landlord with the federal funds it receives from HUD." *United States v. Brown*, 151 F.3d 476, 478 (6th Cir. 1998).

Dep. at 56-58. Plaintiff acknowledged that this apartment would have satisfied her knee problem, but it was not a smoke free environment as referenced in Dr. Chiu's letter. *Id.* Plaintiff had just been diagnosed with the bird fanciers disease, and required a smoke free environment with air conditioning, and also needed to avoid exposure to chemicals. *Id.*

Plaintiff consulted with Attorney Harold Welch, of the Legal Services of Western Michigan. Powers Dep. at 62-63. In a letter dated March 12, 2007, Mr. Welch advised Millie Bevier, property manager at New Horizon Village, that

> An apartment in the Dillon building would not be an acceptable accommodation for Ms. Powers as the building is not smoke-free and does not have air conditioning. These are two requirements for my client's health.

*See* docket no. 34-24. Mr. Welch further stated that plaintiff had been on "a list to move since December, 2005," and that since that date a one bedroom apartment which would have met all of plaintiff's requirements was vacated by Mary Green, and rented to someone else. *Id.*

Defendants also produced a copy of an undated letter from Deborah Cobe (plaintiff's mother) stating that she was present on March 27, 2007, when Ms. Bevier offered a ground level unit to plaintiff at 3011 Heatherdowns, but that this unit "did not have handicap accessibility." *See* docket no. 34-25.

On or about March 28, 2007, Dennis Meade of Midwest Management wrote a letter to HUD for a waiver to use a two-bedroom Section 8 subsidy for plaintiff until a suitable one-bedroom ground floor unit was available for her. *See* docket no. 39-10. Ms. Susie Sapilweski of HUD agreed to a waiver, stating in pertinent part:

> It is my understanding from conversations with Kelly McIntyre-Konkle of my staff that Ms. Powers has been on the waiting list for subsidy since 2005 and due to staffing problems at the property, she still has not been put on subsidy. I'm also

15

told that Ms. Powers has a letter from her doctor to justify a reasonable accommodation for a ground floor unit with air conditioning and no smoke.

Based on the fact that you have no one-bedroom units that meet her medical requirements, I will approve a waiver to allow her to stay in her current unit only until a one-bedroom unit is available. As a condition of the waiver, a written statement signed by Ms. Powers must be placed in her file agreeing to move to a one-bedroom unit when it becomes available.

HUD letter (docket no. 39-11).

Plaintiff and Ms. Bevier entered into the written waiver on March 29, 2007, which provided in pertinent part as follows:

I, Pam Powers, residing at 2801 Heatherdowns Lane, understand and agree that New Horizon Village obtained a temporary waiver from HUD for me to remain in my current two bedroom town home and receive a subsidy as a one person household until a suitable one bedroom home becomes available that meets the requirements of my 504 accommodations; per the "Request for Verification of Accommodations" dated by Pamela Powers on February 21, 2007 and per the letter from Internal Medicine South Wing signed by Patrick Chiu, HO III, M.D. dated March 4, 2007, outlining Pamela Powers medical conditions and accommodations requirements.

I further understand and agree that if the one bedroom home offered me meets the requirements of my 504 accommodations that if I refuse to transfer this temporary waiver will become null and void and I will be responsible each month for the monthly basic carrying charge rate for said town home of 2801 Heatherdowns.

I further understand and agree that upon transferring into a suitable one bedroom home that this waiver will become null and void.

Under this agreement member is responsible for transfer fee per New Horizon Village's transfer policy, member is responsible for the expense of moving, and member will ensure the condition of the home upon vacating will be clean and in acceptable condition per the Occupancy Agreement signed on January 18, 2005.

*See* docket no. 34-27.

While defendants assert that the February 2007 request for accommodation was inadequate, they present no legal or factual basis to support this claim. Rather, they merely

speculate on plaintiff's motives for the request (e.g., "[p]laintiff's entire case seems to hinge on the fact that she was passed over for a specific apartment sometime in 2006 more commonly referred to as the 'Mary Green apartment;'" "[p]laintiff . . . never raises any issues about being transferred until she was pursued for back rent;" and, "[t]here is simply no indication ever given by the Plaintiff that she wanted to transfer out of the Townhouse"). Defendants' Brief at 21-22. Viewing this evidence in the light most favorable to plaintiff, a jury could reasonably find that plaintiff requested an accommodation for both her knees and her breathing problems in February 2007. Accordingly, defendants are not entitled to summary judgment on this claim.

### F. Accord and satisfaction

Next, defendants contend that the March 29, 2007 waiver, which allowed plaintiff to continue living in her two bedroom town home until such time as defendants could provide a suitable one bedroom town home, constituted an accord and satisfaction of plaintiff's claims. Defendants' contention is without merit.

Accord and satisfaction is an affirmative defense which is grounded in contract principles. *Hoerstman General Contracting, Inc. v. Hahn*, 474 Mich. 66, 70, 711 N.W.2d 340 (2006). "An accord is a contract whereby the obligee agrees to discharge a preexisting duty in exchange for some substituted performance." *Stefanac v Cranbrook Educational Community*, 435 Mich. 155, 171; 458 NW2d 56 (1990). A satisfaction "is the discharge of the debt occurring after acceptance of the accord." *Hoerstman General Contracting, Inc.*, 474 Mich. at 70-71.

> Cases in which an accord and satisfaction defense is relevant involve a good-faith dispute about an unliquidated amount owing under a contract. One party makes a tender in satisfaction of the claim (an accord). The other accepts or rejects the accord. If the second party accepts the tender, there is both an accord and a satisfaction.

17

*Id.* at 71. "To prove the existence of an accord and satisfaction, a defendant must show (1) its good-faith dispute of (2) an unliquidated claim of the plaintiff, (3) its conditional tender of money in satisfaction of the claim, and (4) the plaintiff's acceptance of the tender (5) while fully informed of the condition." *Faith Reformed Church of Traverse City, Michigan v. Thompson*, 248 Mich. App. 487, 492, 639 N.W.2d 831 (2001).

The waiver executed between plaintiff and Ms. Bevier does not meet the legal definition of an accord and satisfaction. This case does not involve a good-faith dispute about an unliquidated amount owing under a contract. *See Hoerstman General Contracting, Inc.*, 474 Mich. at 71. Rather, plaintiff seeks damages and injunctive relief for alleged discriminatory conduct in violation of civil rights statutes. *See Kersey v. Washington Area Transit Authority*, 533 F. Supp. 2d 181, 184, n. 2 (D. D.C. 2008) (the doctrine of accord and satisfaction only applies to substitute performance in a contract action; thus, the defendant's attempt to apply accord and satisfaction was misplaced where the plaintiff's claim did not involve "a substitute performance on a contract" but rather arose under the Rehabilitation Act). Furthermore, the March 29th agreement did not contain language settling plaintiff's civil rights claims. By its own terms, this agreement was executed for the purpose of obtaining a temporary waiver from HUD, which enabled plaintiff to remain in her two bedroom town home until a suitable one bedroom town home was available. Accordingly, defendants' motion for summary judgment will be denied on this affirmative defense.

### G. Rehabilitation Act and PWDCRA

Defendants brief does not specifically address plaintiff's claims under the Rehabilitation Act and the PWDCRA. While defendants point out similarities between the FHA, the Rehabilitation Act and the PWDCRA, the focus of their brief is on plaintiff's FHA claim brought

pursuant to § 3604(f)(3)(B).[5] Although neither party identifies the state statute at issue in this action, it appears that plaintiff's PWDCRA claim is brought pursuant to M.C.L. § 37.1506a.[6] There is no question that the FHA, Rehabilitation Act and PWDCRA contain similar elements. *See Robbins v. American Preferred Management Co., Inc.*, No. 5:05-cv-182, 2007 WL 2728746 at *6 (W.D. Mich. Sept. 17, 2007) (observing both the PWDCRA and the Rehabilitation Act require proof of the same elements in establishing a prima facie case of disability discrimination); *Bachman v. Swan Harbour Association*, 252 Mich. App. 400, 653 N.W.2d 415 (2002) (Michigan courts look to the FHA for guidance in construing the provisions of § 37.1506a). However, these three statutes are not identical. In short, while defendants addressed plaintiff's FHA claim in some detail, they have not adequately addressed her claims brought under either the Rehabilitation Act or the PWDCRA. A court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Furthermore,

---

[5] Defendants erroneously cite this as § 360(f)(3)(B). *See* Defendants' Brief at 14, 19.

[6] M.C.L. § 37.1506a provides in pertinent part as follows:

(1) A person shall not do any of the following in connection with a real estate transaction:

(a) Refuse to permit, at the expense of the person with a disability, reasonable modifications of existing premises occupied or to be occupied by the person with a disability if those modifications may be necessary to afford the person with a disability full enjoyment of the premises. In the case of a rental, the landlord may, if reasonable, make permission for a modification contingent on the renter's agreement to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted.

(b) Refuse to make reasonable accommodations in rules, policies, practices, or services, when the accommodations may be necessary to afford the person with a disability equal opportunity to use and enjoy residential real property.

19

defendants' motion will be denied to the extent that the Rehabilitation Act and the PWDCRA contain provisions similar to the FHA with respect to the issues discussed in §§ III. C., D., E. and F., *supra*. Accordingly, defendants' motion is denied to the extent it seeks summary judgment with respect to either the Rehabilitation Act or the PWDCRA.

### IV. Conclusion

Accordingly, defendants' motion to dismiss or for summary judgment (docket no. 33) will be **DENIED**. An order consistent with this opinion shall issue forthwith.


Dated: September 9, 2009					/s/ Hugh W. Brenneman, Jr.
							HUGH W. BRENNEMAN, JR.
							United States Magistrate Judge